**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**December 4, 2014**

**Blaine F. Bates**
**Clerk**

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

IN RE EXPERT SOUTH TULSA, LLC,

Debtor.

LTF REAL ESTATE COMPANY, INC.,

Plaintiff – Counter-Defendant – Appellee,

v.

EXPERT SOUTH TULSA, LLC,

Defendant – Counter-Claimant – Cross-Claimant – Appellant,

and

FIRST AMERICAN TITLE INSURANCE COMPANY,

Defendant – Cross-Defendant – Appellee.

BAP No.     KS-14-009

Bankr. No.   10-20982
Adv. No.     11-06011
Chapter      11

OPINION

Appeal from the United States Bankruptcy Court
for the District of Kansas

Jonathan A. Margolies of McDowell Rice Smith & Buchanan, Kansas City, Missouri, for Defendant – Counter-Claimant – Cross-Claimant – Appellant.

Bruce E. Strauss of Merrick, Baker & Strauss, P.C., Kansas City, Missouri, and Tim L. Droel and J. Matthew Berner of Droel, PLLC, Bloomington, Minnesota, for Plaintiff – Counter-Defendant – Appellee.

Before THURMAN, Chief Judge, ROMERO, and JACOBVITZ, Bankruptcy Judges.

JACOBVITZ, Bankruptcy Judge.

This appeal involves funds placed in escrow by the debtor to ensure the completion of improvements on property it sold. The debtor asks us to review, *inter alia*: 1) whether it was proper for the bankruptcy court to determine the parties' interests in the escrowed funds on summary judgment; 2) whether the funds are property of the estate; and 3) whether the bankruptcy court erred in dismissing the debtor's avoidance counterclaims for failing to state a claim for which relief may be granted. After carefully considering the record, we AFFIRM in part and REVERSE in part.

## FACTUAL BACKGROUND

### A. The Escrow Agreement

The debtor, Expert South Tulsa, LLC ("EST"), is an Oklahoma company that developed and sold commercial property. On October 11, 2007, Appellee LTF Real Estate Company, Inc. ("LTF") entered into an agreement with EST ("Purchase Agreement") to purchase real property in the development known as Memorial Commons in Tulsa, Oklahoma ("Property").[1] The Purchase Agreement required EST to construct certain improvements after closing at its sole expense ("Improvements")[2] and to escrow an amount equal to 120% of the estimated cost

---

[1]    Purchase Agreement, *in* Appellee Supplemental Appendix ("Supp.App.") at 1-28. This agreement was amended four times, but the parties did not provide this Court with the amended agreements. *See* Adversary Complaint at 3, ¶ 13, *in* Appellant's Appendix ("App.") at 30 (detailing amendments).

[2]    Purchase Agreement at 9, ¶ 17(a), *in* Supp.App. at 9. The Improvements include: 1) constructing the detention facility and/or drainage channel serving the Property; 2) constructing storm water connection lines of sufficient capacity from the Property line to the detention facility and/or drainage channel; 3) constructing the Internal Drive as agreed; 4) grading and compacting the site as agreed; 5) extending utilities of sufficient capacity to the Property as agreed by the parties' engineers; and 6) installing a traffic light at the sound end of the project and constructing a vehicular connection to the Property by means of a secondary access to be mutually agreed upon by the parties.

to complete the Improvements.[3]  EST, LTF, and the escrow agent, First American Title Insurance Company ("Escrow Agent") executed an Escrow and Post-Closing Construction Agreement ("Escrow Agreement").[4]  As agreed, EST placed $1,226,400 into an escrow account ("Escrow Account") with Escrow Agent ("Escrowed Funds").  In the event EST failed to timely commence or complete the Improvements, LTF had the option of completing the Improvements and obtaining reimbursement from the Escrow Account ("Self-Help Remedy").[5]

The Escrow Agreement provides that the Escrowed Funds would only be disbursed under certain conditions.[6]  Provided LTF had not exercised the Self-Help Remedy, EST was entitled to receive payment of the Escrowed Funds in three disbursements:

> (i) upon completion of the Grading/Compaction and Utilities Work Segments ("30 Day Work"), (ii) upon completion of the vehicular access and permits components of the Storm Work Work Segment and the Storm Lines, Internal Drives Work Segments (the "90-Day Work"), and (iii) upon completion of the Fence/Screening Work Segment, remainder of the Storm Work Work Segment, and the Traffic Light/Secondary Access Work Segment ("180 Day Work").[7]

EST had no right to any disbursement of Escrowed Funds unless and until it completed a segment of the Improvements.[8]  If EST completed a segment, to obtain payment it was required to submit a payment request to Escrow Agent accompanied by the appropriate forms.[9]  If LTF did not timely object, Escrow Agent was to disburse the requested amount to EST's lender for the benefit of

---

[3]    *Id.* at ¶ 17(b) at 9, *in* Supp.App. at 9.

[4]    Escrow Agreement, *in* App. at 73-83.

[5]    *Id.* at ¶ 4 at 1-2, *in* App. at 73-74.

[6]    *Id.* at ¶ 5 at 3-4, *in* App. at 75-76.

[7]    *Id.* at  ¶ 5(a) at 3, *in* App. at 75 (emphasis omitted).

[8]    *Id.*

[9]    *Id.*

-3-

EST.[10] However, if LTF exercised a Self-Help Remedy for any segment, EST had no further right to any disbursement of Escrowed Funds, even for a segment EST had partially or fully completed, until LTF was fully reimbursed for its cost of completing the segment or segments for which it exercised the Self-Help Remedy.[11] Thus, EST's right to ever receive a disbursement of Escrowed Funds terminated to the extent LTF had a right of reimbursement.

EST engaged Key Construction Oklahoma, LLC ("Key Construction") to make the Improvements. Although Key Construction began work on the Improvements, the work was not completed. There is nothing in the record indicating that EST completed any of the three segments (30 Day Work, 90 Day Work, or 180 Day Work) described above, nor does EST assert that it did. Escrow Agent has not disbursed any money to EST from the Escrow Account on account of the work EST performed.

On April 22, 2009, Key Construction filed suit against EST in state court for breach of contract, quantum meruit, and foreclosure of mechanics and materialman's liens.[12] Key Construction alleged that EST owed it an outstanding balance of $440,699. Key Construction and its subcontractors have settled and dismissed their claims against EST.[13]

## B.    The Adversary Proceeding

On March 30, 2010, Team Viva, another creditor of EST, filed an involuntary petition under Chapter 7 of the Bankruptcy Code against EST. EST voluntarily converted the case to Chapter 11. After conversion of the case, LTF

---

[10]    *Id.* at ¶ 5(b) at 3, *in* App. at 75.

[11]    *Id.* at ¶ 5(d) at 3, *in* App. at 75.

[12]    Memorandum in Support of Plaintiff's Motion for Summary Judgment at 5, ¶ 17, *in* App. at 60.

[13]    *Id.* at ¶ 19.

filed an adversary proceeding against EST seeking a declaration regarding the rights and interests each party had in the Escrowed Funds ("Declaratory Action"). LTF alleged that neither EST nor the bankruptcy estate had any interest in the Escrowed Funds and that LTF was entitled to exercise the Self-Help Remedy under the terms of the Escrow Agreement. LTF also named Escrow Agent as a defendant, requesting that it be ordered to disburse the Escrowed Funds to LTF. EST filed an answer and counterclaim, asserting that it was entitled to a distribution of all of the Escrowed Funds because they were property of the bankruptcy estate. EST also asked the bankruptcy court to determine that the Escrow Agreement was void and/or unenforceable.[14]

On April 4, 2011, LTF filed a motion for summary judgment in the Declaratory Action. EST argued that the motion was premature because it was filed prior to the commencement of discovery and that fact issues precluded summary judgment.[15] On August 29, 2011, the bankruptcy court granted partial summary judgment in LTF's favor, concluding: 1) EST had only a contingent interest in the Escrowed Funds; 2) the Escrowed Funds were not property of the estate; 3) neither EST nor LTF were entitled to a disbursement of the Escrowed Funds at that time; and 4) LTF could exercise the Self-Help Remedy under the terms of the Escrow Agreement.[16] The opinion was implemented by a separate

---

[14] Answer at 5, *in* App. at 50. Because this counterclaim mirrors LTF's Declaratory Action, future references to the Declaratory Action refer both to LTF's complaint and the counterclaim.

[15] Response in Opposition to Plaintiff's Motion for Summary Judgment, *in* App. at 84-94.

[16] Memorandum Opinion and Order Granting Plaintiff's Motion for Summary Judgment, In Part, *in* App. at 112-119. LTF did not prevail on two of its claims: 1) EST had no rights to the Escrowed Funds, and 2) Escrow Agent should disburse the Escrowed Funds to LTF.

judgment entered on August 31, 2011[17] (together, the memorandum opinion and judgment will be referred to as the "2011 Summary Judgment").

On September 12, 2011, EST filed a motion to alter or amend the 2011 Summary Judgment to correct clear error and prevent manifest injustice.[18]  Once again, EST argued that summary judgment was premature because it was denied the opportunity to conduct any discovery to establish the factual foundation for its affirmative defenses and counterclaims.  EST also argued that summary judgment was improper because resolution of the issues required interpretation of an ambiguous contract.[19]  The bankruptcy court denied the motion to alter or amend because EST had presented the same or similar arguments in opposition to LTF's summary judgment motion.[20]  It also stated:

> the agreements at issue are clear, unambiguous, and therefore must be enforced in accordance with their express terms.  Likewise, [EST] has failed to adduce any evidence creating a genuine issue of material fact for trial, and has otherwise "fail[ed] to explain what facts it needs to discover to present its opposition" to LTF's summary judgment motion.[21]

On September 15, 2011, EST filed an amended answer that included an amended counterclaim ("Amended Counterclaim"),[22] asserting two additional counterclaims against LTF.  EST's new claims sought to avoid its sale of the

---

[17]  Judgment dated August 31, 2011, *in* App. at 128-29.  This judgment was partial because it did not expressly adjudicate:  1) EST's counterclaim that it is entitled to the Escrowed Funds, 2) the parties' claims against Escrow Agent, or 3) who is entitled to the Escrowed Funds.

[18]  Motion to Alter or Amend Judgment, *in* App. at 130-39.

[19]  *Id*. at 7-10, *in* App. at 136-39.

[20]  Memorandum and Order Denying EST's Motion to Amend or Alter Judgment, *in* App. at 158-61.

[21]  *Id*. at 3, *in* App. at 160 (citation omitted).  Because EST does not challenge the bankruptcy court's conclusion that the Agreements were unambiguous in its appellate brief, it has abandoned this argument and we will not consider or address it.  *In re Mayes*, 294 B.R. 145, 148 (10th Cir. BAP 2003).

[22]  Amended Counterclaim, *in* App. at 140-49.

Property to LTF under Sections 544(b), 548 and 550 ("Avoidance Counterclaims").[23]  EST also filed a motion to compel LTF to respond to discovery requests it had made prior to the entry of the 2011 Summary Judgment. LTF did not file a reply to the Avoidance Counterclaims or respond to the motion to compel.

On December 15, 2011, EST sought summary judgment on the Avoidance Counterclaims on the ground that LTF defaulted by failing to file a reply to the Amended Counterclaim.[24]  In response, LTF argued that:  1) the Avoidance Counterclaims were filed without first obtaining LTF's written consent or leave of court in violation of Federal Rule of Bankruptcy Procedure 7015;[25] and 2) EST was precluded from prosecuting these counterclaims because the 2011 Summary Judgment entirely disposed of the Declaratory Action and it was now too late to appeal that judgment.[26]  On January 27, 2012, the bankruptcy court denied EST's motion for summary judgment on the ground that EST failed to seek leave to file post-judgment counterclaims contrary to Rule 7013 ("Counterclaim Amendment Order").[27]

On February 10, 2012, EST sought to alter or amend the Counterclaim Amendment Order.  EST argued that it was not required to seek leave of court to

---

[23]      EST asserted the sale of the Property was a fraudulent transfer under Sections 544 and 548 because EST did not receive reasonably equivalent value for the Property.

[24]      Motion for Summary Judgment on Counts II and III of the Amended Counterclaim, *in* App. at 162-68.

[25]      All future references to "Rule" refer to the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedures; those denominated in a single or double digit are Civil Rules, and those denominated in the thousands are Bankruptcy Rules.

[26]      LTF's Memorandum of Law in Opposition to EST's Motion for Summary Judgment, *in* App. at 178-99.

[27]      Counterclaim Amendment Order, *in* App. at 205-06.

amend its counterclaim because the scheduling order entered in the adversary proceeding authorized such a filing.[28] By an order entered February 14, 2012,[29] the bankruptcy court denied that motion, concluding the scheduling order did not allow a party to bypass Rule 7015 and file an amended pleading without leave of court or consent of other parties ("Counterclaim Reconsideration Order"). It also noted that EST did not merely file an amended answer, but filed two previously omitted counterclaims after the case had progressed past the initial pleading stage, thus triggering Rule 7013's leave of court requirement.

On February 28, 2012, EST appealed the 2011 Summary Judgment, the Counterclaim Amendment Order, and the Counterclaim Reconsideration Order to this Court.[30] After the parties briefed the issue of why the appeal should not be dismissed as untimely or interlocutory, this Court entered an order on May 29, 2012, concluding that: 1) the appealed orders were interlocutory because LTF's claims against Escrow Agent and EST's original counterclaim had yet to be adjudicated; 2) EST was entitled to rely on the absence of an express adjudication of its original counterclaim in continuing to prosecute its claims against LTF, including amending its pleadings and seeking discovery; 3) the bankruptcy court erred to the extent it declared the 2011 Summary Judgment was final and appealable; and 4) no exceptional circumstances were present to warrant granting leave to appeal these orders.[31] Dismissal of the appeal, however, was stayed for

---

[28] Motion to Alter or Amend [Counterclaim Amendment Order], *in* App. at 207-11. The Scheduling Order provided that: "Defendant shall be allowed until September 15, 2011 to join additional parties and/or to amend its pleadings." Scheduling Order at 3, ¶4, *in* App. at 110.

[29] Order Denying [EST's] Motion to Alter or Amend [Counterclaim Amendment Order], *in* App. at 212-13.

[30] *LTF Real Estate Co., Inc. v. Expert S. Tulsa, LLC (In re Expert S. Tulsa, LLC)*, *appeal docketed*, No. KS-12-012 (10th Cir. BAP Feb. 28, 2012).

[31] Order dated May 29, 2012 at 6-8, *in* App. at 219-21 ("May 29, 2012

(continued...)

-8-

sixty days to allow EST time to seek a Rule 54(b) certification or to obtain an express adjudication of all claims in the Declaratory Action. After the sixty-day period expired, this Court dismissed the appeal (together, the order dismissing the appeal[32] and the May 29, 2012 order will be referred to as the "BAP Orders").

After the appeal was dismissed, the bankruptcy court reinstated the Avoidance Counterclaims.[33] LTF then filed a motion to dismiss EST's original counterclaim and the Avoidance Counterclaims under the law-of-the-case doctrine.[34] LTF also argued that EST could not allege or prove the Avoidance Counterclaims involved property of the estate. Approximately seven months after filing the Motion to Dismiss, LTF filed a separate motion for summary judgment on the Avoidance Counterclaims.[35] This motion mirrored the Motion to Dismiss, but also requested an order requiring Escrow Agent to disburse the Escrowed Funds to it.

On February 18, 2014, the bankruptcy court entered an order granting LTF's Motion to Dismiss and dismissed EST's original counterclaim without prejudice because it did not involve property of estate and was a noncore matter which the court, in its discretion, would abstain from hearing ("Dismissal

---

[31]    (...continued)
Order").

[32]    [BAP] Dismissal Order dated August 1, 2012, *in* Supp.App. at 49.

[33]    July 25, 2012 Hearing Tr. at 3, 6, *in* App. at 253, 256. It is not entirely clear that the May 29, 2012 Order actually required the bankruptcy court to reinstate the Avoidance Counterclaims. The import of the order was that the 2011 Summary Judgment was not final and did not dispose of the Declaratory Action because the original counterclaims had not been adjudicated.

[34]    Motion to Dismiss, *in* App. at 232-43.

[35]    LTF's Motion and Memorandum of Law in Support of Motion for Summary Judgment Dismissing EST's "Amended Counterclaim" and Disbursing Escrow Escrowed Funds, *in* Supp.App. at 50-72.

Order").[36]  The bankruptcy court also dismissed Escrow Agent as a party to the adversary because it lacked jurisdiction to direct a third-party escrow agent to dispose of or disburse nonestate property.  The Dismissal Order also contained a *sua sponte* dismissal of the Avoidance Counterclaims under Rule 12(b)(6) after determining EST failed to adequately plead its claims under Sections 544 and 548.  The bankruptcy court then entered separate orders denying as moot LTF's motion for summary judgment on the counterclaims, EST's original motion for summary judgment, and EST's motion to stay scheduling order deadlines (collectively "Moot Orders").[37]  EST now appeals the 2011 Summary Judgment and the accompanying order denying the motion to reconsider that judgment, the Counterclaim Amendment Order, the Counterclaim Reconsideration Order, the Dismissal Order, and the Moot Orders.[38]

## APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[39]  The appealed orders together dispose of all of the claims in the adversary proceeding, thus they are final orders for purposes of appeal.[40]  EST timely filed a notice of

---

[36]     Dismissal Order, *in* App. at 288-301.

[37]     *See* Order Denying Defendant's Motion for Summary Judgment as Moot, *in* App. at 284-85; Order Denying Defendant's Motion to Stay Scheduling Order Deadlines as Moot, *in* App. at 286-87; Order Denying Plaintiff's Motion for Summary Judgment as Moot, *in* Supp.App. at 77-78.

[38]     Notice of Appeal, *in* App. at 316-18.

[39]     28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002; 10th Cir. BAP L.R. 8001-3.

[40]     *Long v. St. Paul Fire and Marine Ins. Co.*, 589 F.3d 1075, 1078 n.2 (10th Cir. 2009) ("[O]nce the district court enters a final order, its earlier interlocutory orders merge into the final judgment and are reviewable on appeal."); *Holaday v. Seay (In re Seay)*, 215 B.R. 780, 785 (10th Cir. BAP 1997) (bankruptcy court's

(continued...)

appeal from the Dismissal Order and Moot Orders.[41]  None of the parties elected

to have this appeal heard by the United States District Court for the District of

Kansas.  The parties have therefore consented to appellate review by this Court.

## STANDARD OF REVIEW

For purposes of standard of review, decisions by trial courts are

traditionally divided into three categories, denominated:  1) questions of law,

which are reviewable *de novo*; 2) questions of fact, which are reviewable for clear

error; and, 3) matters of discretion, which are reviewable for abuse of discretion.[42]

*De novo* review requires an independent determination of the issues, giving no

special weight to the bankruptcy court's decision.[43]  A factual finding is "clearly

erroneous" when "'it is without factual support in the record, or if the appellate

court, after reviewing all the evidence, is left with the definite and firm

conviction that a mistake has been made.'"[44]  "Under the abuse of discretion

standard:  'a trial court's decision will not be disturbed unless the appellate court

has a definite and firm conviction that the lower court made a clear error of

---

[40]     (...continued)
summary judgment order on nondischargeability claim under fraud exception, combined with judgment for debtor from trial of claims seeking denial of discharge, disposed of entire complaint, and orders thus were final and appealable).

[41]     Because the other orders referenced above (the 2011 Summary Judgment, the Counterclaim Amendment Order, the Counterclaim Reconsideration Order, and the Moot Orders) were interlocutory and merged with the Dismissal Order, EST's timely appeal of the Dismissal Order constitutes a timely appeal of those orders as well.

[42]     *Pierce v. Underwood*, 487 U.S. 552, 558 (1988); *see Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir. 1996).

[43]     *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).

[44]     *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *LeMaire ex rel. LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987)).

judgment or exceeded the bounds of permissible choice in the circumstances.'"[45]

We review a bankruptcy court's denial of a Rule 56(d) request to conduct additional discovery prior to entry of summary judgment for abuse of discretion.[46] We, however, review a bankruptcy court's grant of summary judgment *de novo*, applying "the same legal standard as was used by the bankruptcy court to determine whether either party is entitled to judgment as a matter of law."[47] We review a bankruptcy court's determination whether property is property of the estate *de novo*.[48] Likewise, we review the dismissal of a claim under Rule 12(b)(6) *de novo*.[49] Finally, we review a bankruptcy court's ruling on a Rule 59(e) motion for an abuse of discretion.[50]

## DISCUSSION

On appeal, EST asks us to reverse the bankruptcy court's summary judgment determinations regarding the parties' interests in the Escrowed Funds. EST argues that the bankruptcy court erred by: 1) prematurely granting summary judgment in favor of LTF; 2) concluding the Escrowed Funds are not property of the estate; 3) concluding LTF retained the right to exercise the Self-Help Remedy

---

[45]   *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).

[46]   *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (review a court's denial of a Rule 56(f) [now Rule 56(d)] motion for an abuse of discretion); *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (same).

[47]   *Rushton v. Bank of Utah (In re C.W. Mining Co.)*, 477 B.R. 176, 180 (10th Cir. BAP 2012) (internal quotation marks omitted), *aff'd*, 749 F.3d 895 (10th Cir. 2014).

[48]   *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 517 (10th Cir. BAP 2002).

[49]   *Williams v. Meyer (In re Williams)*, 438 B.R. 679, 683 (10th Cir. BAP 2010).

[50]   *Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1275 (10th Cir. 2005).

-12-

postpetition; and (4) declining to reconsider that ruling. EST also asks us to reverse the bankruptcy court's dismissal of the Avoidance Counterclaims and its denial of summary judgment in EST's favor on those claims. We address each issue in turn below.

## A. Summary Judgment Regarding the Escrowed Funds

Rule 56 governs motions for summary judgment and is made applicable in adversary proceedings by Rule 7056. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[51] The movant bears the burden of proving the absence of controverted facts. Once this initial burden is met, the nonmovant must not only set forth specific facts showing there is a genuine issue for trial, but also that the disputed fact is material. Facts not properly controverted may be deemed undisputed for purposes of the motion.[52]

### 1. The bankruptcy court did not abuse its discretion in granting partial summary judgment prior to the commencement of discovery.

EST argues that the bankruptcy court erred by granting partial summary judgment before the commencement of discovery.[53] More specifically, EST contends it was deprived of the opportunity to develop facts to show the Escrow Agreement was void and that EST owned the Escrowed Funds on the petition date, or at least to show there were material facts in genuine dispute.[54] We disagree.

Although Rule 56 contains a deadline for filing a summary judgment motion - which is 30 days after the close of all discovery - nothing in the rule

---

[51]     Fed. R. Civ. P. 56(a).

[52]     Fed. R. Civ. P. 56(e)(2); D. Kan. Rule 56.1(a).

[53]     Appellant's Brief at 6-9.

[54]     *Id.* at 8-9.

prohibits the entry of summary judgment before discovery commences or is completed.[55] Unlike other rules, which explicitly specify how early a particular motion can be filed, there is no waiting period to file a summary judgment motion.[56] A party may be entitled to judgment as a matter of law based on the facts known to him at the time the case was commenced.[57]

If a party believes that summary judgment is premature, Rule 56(d) provides a mechanism to defer consideration of such a motion to permit further discovery. That rule provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>> (1) defer considering the motion or deny it;
>> (2) allow time to obtain affidavits or declarations or to take discovery; or
>> (3) issue any other appropriate order.

The general principle of Rule 56(d) is that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."[58]

To invoke Rule 56(d)'s protections, the nonmovant must furnish an affidavit or declaration explaining why facts precluding summary judgment cannot be presented without granting the nonmovant additional time to respond, including identifying the probable facts not available and what steps have been

---

[55]  *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th Cir. 1985) ("There is no requirement in Rule 56 . . . that summary judgment not be entered until discovery is complete.").

[56]  *Compare* Fed. R. Civ. P. 56(b) (a party may file a motion for summary judgment at any time until 30 days after the close of all discovery) *with* Fed. R. Civ. P. 11 (21 day waiting period to file motion for sanctions); Fed. R. Civ. P. 26(d) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)[.]").

[57]  *Engelking v. Watters,* 20 F.3d 1171, at *4 (5th Cir. 1994) (noting that discovery need not be allowed in every case when "summary judgment can be based on the parties' pleadings alone").

[58]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986).

taken to obtain these facts.[59]  The nonmovant must also explain "how additional time will enable him to rebut movant's allegations of no genuine issue of fact."[60]

Here, EST invoked Rule 56(d) in its response in opposition to LTF's summary judgment motion.[61]  However, the response lacked the information required by Rule 56(d).  LTF set forth twenty-seven material facts in its motion for summary judgment.  EST's preliminary response to these facts was a general statement that it had yet to conduct any discovery and should be afforded an opportunity to discover matters to contravene them.[62]  In its affidavit in opposition to summary judgment, EST simply attested that "[it] intends to conduct discovery in this action upon the existence of authorization to do so."[63]  Neither the affidavit nor the response shed light on what facts needed to be developed, why they were not available, and how additional time would enable it to rebut LTF's allegations of no genuine issue of material fact.[64]  Because EST's Rule 56(d) request was patently deficient, the bankruptcy court did not abuse its

---

[59]  *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir.1992); *Price ex re. Price v. W. Res., Inc.*, 232 F.3d 770, 783 (10th Cir. 2000).

[60]  *Patty Precision v. Brown & Sharpe Mfg. Co.,* 742 F.2d 1260, 1264 (10th Cir. 1984).

[61]  EST's Response in Opposition to Plaintiff's Motion for Summary Judgment at 7, ¶ 16, *in* App. at 90 (". . . [m]otion . . . should be denied . . . pursuant to Rule 56(d)(1).").

[62]  *Id.* at 2-3, *in* App. at 85-86.  EST did specifically controvert paragraphs 26 ("Debtor has nothing more than a contingent remainder [interest] in the Escrowed Funds") and 27 ("The entire amount in escrow is available to complete the improvements to the Property.") of the summary judgment motion, stating they were legal conclusions, not facts.  Even if true, this controversion neither establishes a genuine issue of material fact nor a Rule 56(d) explanation.

[63]  *Id.*, Affidavit in Opposition to Plaintiff's Motion for Summary Judgment at 2, ¶7, *in* App. at 93.

[64]  *Pasternak v. Lear Petro. Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986) (" Rule 56(f) [now Rule 56(d)] may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable[.]").

discretion in denying it.[65]

### 2. The bankruptcy court correctly concluded that the Escrowed Funds are not property of the estate.

Next, EST claims that because it supplied the Escrowed Funds and performed some Improvements prepetition, it held title, as well as a vested or present interest, in the Escrowed Funds, making them property of the estate.[66] Moreover, because LTF did not implement the Self-Help Remedy prepetition, EST contends it was entitled to a disbursement of Escrowed Funds on the petition date.[67] Alternatively, EST argues the estate owns and is entitled to the Escrowed Funds because the Escrow Agreement was void on the petition date by its terms and by the parties' lengthy inaction.[68] These arguments are unpersuasive.

Section 541(a)(1) defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." This includes all causes of action and

---

[65]    *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081-83 (10th Cir. 1985); *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 731-32 (10th Cir. 2006); *McKissick v. Yuen*, 618 F.3d 1177, 1190 (10th Cir. 2010). *See also THI-Hawaii, Inc. v. First Commerce Fin'l Corp.*, 627 F.2d 991, 994 (9th Cir. 1980) (district court did not err in granting summary judgment prior to any discovery where nonmoving party failed to move for a continuance under 56(f)); *Over The Road Drivers, Inc. v. Transp. Ins. Co.*, 637 F.2d 816, 821 (1st Cir. 1980) (where party never requested court to postpone summary judgment hearing as it might have under 56(f), absence of discovery in no way precludes summary judgment); *Mid-South Grizzlies v. Nat'l Football League*, 720 F.2d 772, 780 & n.4 (3rd Cir. 1983) (most courts agree that filing an affidavit is necessary for preservation of a Rule 56(f) contention that summary judgment should be denied pending further discovery); *Shavrnoch v. Clark Oil and Ref. Corp.*, 726 F.2d 291, 294 (6th Cir. 1984) (absent 56(f) affidavit, district court did not abuse its discretion by granting movant's summary judgment motion prior to completion of nonmovant's discovery).

[66]    Appellant's Brief at 10-11.

[67]    *Id.* at 11 n.2.

[68]    *Id.* at 12; Appellant's Reply Brief at 4, n.3.

claims held by the debtor on the petition date.[69]  While Section 541(a)(1) is construed broadly, it is not without limits.  "[T]he estate can only succeed to the same property interest that the debtor possesses, and cannot achieve a greater interest."[70]  Federal bankruptcy law determines the extent to which a debtor's property interests are property of the estate, while state law defines the debtor's interest in property.[71]

Under Oklahoma law, an entity's interest in escrowed funds is limited where the entity placed the funds in escrow for a specific purpose and that purpose has not yet been achieved.  In *Marion Machine, Foundry & Supply Co. v. First National Bank & Trust Company of Tulsa*,[72] the seller of an interest in an oil and gas lease promised to drill a well on the property for the benefit of buyer. The buyer placed the $25,000 purchase price in escrow.  The escrow agent was to pay the escrowed funds to the seller only upon its completion of the well free and clear of liens.  The Oklahoma Supreme Court determined that the fund was created and placed in escrow for a specific purpose (*i.e.* to assure completion of the well and to pay all claims relating to such completion that could result in a lien against the property).  The court held that "until these claims were all paid and the fund released, the [seller's assignee] had no right to assign any portion of

---

[69]    *In re Gavend*, No. 93-1494, 1994 WL 235535, at *1 (10th Cir. June 2, 1994) ("Under 11 U.S.C. 541(a)(1), bankruptcy estate property includes all causes of action[.]").

[70]    5 *Collier on Bankruptcy* ¶ 541.01 at 541-10 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. 2014).  *Kapila v. Atl. Mortg. and Inv. Corp. (In re Halabi)*, 184 F.3d 1335, 1337 (11th Cir. 1999) (reciting the well known bankruptcy principle that "an interest that is limited in the hands of the debtor is equally limited in the hands of the estate") (internal quotation marks omitted).

[71]    *Butner v. United States*, 440 U.S. 48, 54-55 (1979); *In re Wise*, 346 F.3d 1239, 1242 (10th Cir. 2003).

[72]    58 P.2d 900 (Okla. 1936).

said fund to any outside creditor."[73] As discussed in more detail below, Oklahoma law is therefore consistent with our conclusion that EST did not have a present, vested interest in the Escrowed Funds on the petition date.

Applying federal bankruptcy law, most courts hold that funds held in escrow to assure or guarantee the debtor's performance of an obligation are not property of the estate where:[74] (1) the funds were placed in escrow under an escrow agreement for the benefit or protection of another party; (2) the funds were in the possession and control of an escrow agent on the petition date; and (3) the debtor is entitled to receive the funds (or some portion thereof) only after fulfilling certain conditions.[75] Some courts characterize essentially these same criteria as "factors," which if met, favor concluding that escrowed funds are not property of the estate.[76] Under these circumstances, "[a]ny claim, contingency or chose in action against the trust fund is the property of the estate *but the fund itself is not.*"[77]

---

[73] *Id.* at 905.

[74] Although we limited our focus to the facts at hand, we are not suggesting our conclusion applies only to escrowed funds that meet the criteria listed herein.

[75] *5 Collier on Bankruptcy* ¶ 541.09[2] at 541-50-51 ("[m]ost courts have held that assets in escrow are not property of the estate. Estate property is confined to the rights conferred upon the debtor by the escrow agreement, not property rights in the assets escrowed."). *See also In re Palm Beach Heights Dev. & Sales Corp.*, 52 B.R. 181 (Bankr. S.D. Fla. 1985); *Dolphin Titan Int'l, Inc. v. Gray & Co., Inc. (In re Dolphin Titan Int'l, Inc.)*, 93 B.R. 508 (Bankr. S.D. Tex. 1988); *Cedar Rapids Meats, Inc. v. Hager (In re Cedar Rapids Meats, Inc.)*, 121 B.R. 562 (Bankr. N.D. Iowa 1990); *In re Alt. Gulf Cmtys. Corp.*, 369 B.R. 156 (Bankr. Del. 2007).

[76] *See, e.g, Cedar Rapids Meats,* 121 B.R. at 567 (citing factors collected in *World Commc'ns, Inc. v. Direct Mktg. Guar. Trust (In re World Commc'ns)*, 72 B.R. 498, 500 (D. Utah 1987)). Relevant factors include: "whether the debtor initiated or agreed to the creation of the escrow; what, if any, control the debtor exercises over it, the incipient source of it, the nature of the funds put into it, the recipient of its remainder (if any), the target of its benefit, and the purpose of its creation." *Id.*

[77] *In re Int'l Tobacco Partners, Ltd.,* 462 B.R. 378, 389 n.13 (Bankr.

(continued...)

At least one court has applied this rationale when faced with facts similar to those before us. In *Palm Beach*, the debtor placed funds in escrow to guarantee that it would complete certain drainage and road improvement work.[78] The bankruptcy court concluded the escrowed funds were not property of the estate based on the following rationale:

> Said fund is a trust or escrow to assure the completion of the road and drainage improvements on the property and only upon completion of the improvements, would debtor have any interest in the fund. Any claim, contingency or chose in action against the trust fund is the property of the estate but the fund itself is not. The debtor may not have any part of said fund until such time as the debtor establishes that all prior claims in the fund have been paid and that a residuum remains to which it is entitled.[79]

We are persuaded by the reasoning of *Palm Beach* and similar cases. The majority rule that estate property includes the claim to receive a disbursement of escrowed funds after satisfying certain conditions - but not the funds themselves - gives effect to the terms of the Escrow Agreement and the intent of the parties in this case. EST agreed to create the escrow for LTF's benefit with the objective of guaranteeing the completion of the Improvements. EST is not in possession of and has no control over the Escrowed Funds. Under the Escrow Agreement, EST only had a right to receive payment of the Escrowed Funds in three disbursements: (1) upon its completion of a segment of the Improvements (the 30 Day Work, the 90 Day Work, or the 180 Day Work), but only if LTF had not already exercised the Self-Help Remedy as to a prior segment; or (2) if LTF exercised the Self-Help Remedy, only if funds remained after LTF was

---

[77]    (...continued)
E.D.N.Y. 2011) (quoting *Palm Beach*, 52 B.R. at 183 (emphasis added)). *See also In re TMT Procurement Corp.*, 764 F.3d 512, 524 n.48 (5th Cir. 2014) ("[F]unds held in escrow are 'property of the estate' only to the extent of the debtor's independent right to that property") (citing *In re Kemp*, 52 F.3d 546, 551-53 (5th Cir. 1995)).

[78]    *Palm Beach*, 52 B.R. at 183.

[79]    Id.

reimbursed for its cost of completing one or more segment.

Despite EST's protestations that it performed "some of the property [I]mprovements prepetition,"[80] the record does not indicate, and EST does not argue on appeal, that it had completed any of the three segments of the Improvements prior to the petition date. Thus, as of the petition date, EST did not have a present, vested interest in the Escrowed Funds under the Escrow Agreement. Instead, any interest EST had in the Escrowed Funds was contingent upon its completion of a segment before LTF exercised a Self-Help Remedy or upon any Escrowed Funds remaining after reimbursing LTF for LTF's cost of completion. EST's ability to assert a claim against Escrow Agent to enforce its conditional contractual right to payment became property of the estate on the petition date. However, the Escrowed Funds themselves did not. Thus, applying both Oklahoma and federal bankruptcy law, the bankruptcy court correctly concluded that the Escrowed Funds were not property of the estate.

Alternatively, EST argues it is entitled to the Escrow Funds for another reason. According to EST, the Escrow Agreement was void prepetition as of September 30, 2009, or as a result of the parties' failure to complete their objective prepetition. These arguments are without merit. The September 30, 2009 deadline applies to the disbursement of any residuals to EST and applies

---

[80]    Appellant's Brief at 11.

only if no dispute exists between EST and LTF regarding the Escrowed Funds. That section provides:

> Any Escrowed Funds remaining in the Escrow Account after disbursement of all amounts requested for all phases of [EST's] Post-Closing Work, including disbursement to [LTF] if [LTF] has exercised Self Help, shall be disbursed to [EST]; provided, however, that, in any event, provided no dispute exists between [EST] and [LTF] regarding the Escrowed Funds, Escrow Agent shall disburse any Escrowed Funds remaining in the Escrow Account . . . as of September 30, 2009 to EST.[81]

Here, as of the petition date, no requested funds had been disbursed, and a dispute existed between EST and LTF. Further, the Escrow Agreement contains no termination provision. It was therefore not void as of September 30, 2009.

EST also provides no authority to support its argument that the Escrow Agreement was void because the parties failed to complete its objective prepetition, and this Court has found none. EST's position would allow a party to unilaterally circumvent such agreement simply by commencing bankruptcy before meeting its obligation to complete improvements.

In sum, the bankruptcy court correctly concluded that the Escrowed Funds are not property of the estate and EST did not have a right to disbursement of the Escrowed Funds. The estate owned EST's right to assert a claim against Escrow Agent to enforce its contractual rights under the Escrow Agreement.

### 3. EST has not preserved for appeal its remaining argument as to why LTF was prohibited from exercising the Self-Help Remedy post-petition.

In addition to asserting the Escrow Agreement was void and/or unenforceable, EST also argues that the bankruptcy court erred in allowing LTF to exercise the Self-Help Remedy postpetition without modifying the automatic stay. More specifically, EST contends: (1) the automatic stay applies to exercise of the Self- Help Remedy; (2) LTF did not seek stay relief; and (3) the bankruptcy

---

[81] Escrow Agreement at 4, ¶5(e), *in* App. at 76.

court provided no legal basis for modifying the stay.[82] EST, however, did not preserve this issue for appeal. In the Tenth Circuit, "the vague and ambiguous presentation of a theory" to "the [lower] court [does not] preserve that theory as an appellate issue."[83] "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."[84] "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."[85]

Our examination of the record shows that prior to filing its brief in this Court, EST only mentioned the automatic stay once to the bankruptcy court. In its response in opposition to LTF's summary judgment motion, EST included a conclusory statement that "[w]ith the commencement of the bankruptcy proceeding, the automatic stay bars any attempt by [LTF] to take any action adverse to [EST] or otherwise prosecute a claim against the funds. [LTF] fails to take cognizance at all of the effect of the automatic stay on its exercise of any alleged rights under the Escrow Agreement."[86] EST presumably relies on Section 362(a) for its assertion that exercise of the Self Help Remedy is subject to the automatic stay. Section 362 contains eight subsections. EST did not specify to the bankruptcy court, or to us, which subsection or subsections upon which it relies, and he has not argued why exercise of the Self -Help Remedy is stayed.

---

[82]   Appellant's Brief at 12-13.

[83]   *Ecclesiastes 9:10–11–12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007) (internal quotation marks omitted).

[84]   *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

[85]   *Zannino*, 895 F.2d at 17.

[86]   EST's Response in Opposition to Plaintiff's Motion for Summary Judgment at 7, ¶ 14, *in* App. at 90.

EST has therefore not preserved the automatic stay issue for appeal.

### 4. The bankruptcy court did not abuse its discretion in denying EST's Motion to Alter the 2011 Summary Judgment.

Rule 59(e), made applicable to bankruptcy proceedings by Rule 9023, allows a court to reconsider a previous ruling under certain circumstances.[87] Grounds for reconsideration include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[88] "Rule 59(e) does not allow the losing party to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier."[89]

In its motion to alter or amend, EST failed to identify grounds warranting relief under Rule 59(e). EST urged the bankruptcy court to reconsider the 2011 Summary Judgment to correct error and prevent manifest injustice, but it simply pointed to the same arguments presented in opposition to LTF's summary judgment motion. EST has not alleged an intervening change in the law or that it discovered new evidence. Consequently, the bankruptcy court did not abuse its discretion in declining to alter or amend the 2011 Summary Judgment.

### B. Dismissal of the Avoidance Counterclaims Pursuant to Rule 12(b)(6) For Failure to State a Claim Based on Factual Pleading Deficiencies

In the Dismissal Order, the bankruptcy court dismissed the Avoidance Counterclaims pursuant to Rule 12(b)(6) because EST did not allege sufficient facts to support a plausible claim for relief under Sections 544 or 548 as required

---

[87]     *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[88]     *Id.*

[89]     *Nat'l Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990); *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986).

by the Supreme Court in *Twombly* and *Iqbal*.[90]  As an initial matter, we note that LTF's motion to dismiss the Avoidance Counterclaims sought dismissal under the law-of-the-case doctrine.  LTF did not raise lack of factual specificity as a ground for dismissal.  The bankruptcy court dismissed the Avoidance Counterclaims for factual pleading deficiencies *sua sponte*.

Rule 12(b)(6) allows courts to dismiss a claim for relief where the plaintiff has failed "to state a claim upon which relief can be granted."[91]  "Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon."[92]  The Supreme Court provided the following rationale for this  safeguard:

> These procedures alert [a plaintiff] to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.  This adversarial process also crystallizes the pertinent issues and facilitates appellate review of a trial court dismissal by creating a more complete record of the case.[93]

The general inquiry under Rule 12(b)(6) is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."[94]  To withstand a motion to dismiss, a plaintiff must sufficiently allege all facts necessary to support the required elements under the legal theory proposed.[95]

---

[90]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[91]  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012.

[92]  *Neitzke v. Williams*, 490 U.S. 319, 329 (1989).

[93]  *Id.* at 329-30 (citing *Brandon v. D.C. Bd. of Parole*, 734 F.2d 56, 59 (D.C. Cir. 1984)).

[94]  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

[95]  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"[A] court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[96] All well-pleaded factual allegations in a complaint are accepted as true and viewed in the light most favorable to the nonmoving party.[97]

*Sua sponte* dismissal under Rule 12(b)(6) is permitted under certain circumstances "as long as the procedure employed is fair to the parties."[98] The Tenth Circuit disfavors *sua sponte* dismissal, but has held that such "dismissal . . . is not reversible error when it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing . . . an opportunity to amend [the] complaint would be futile."[99]

With these principles in mind, we review the Amended Counterclaim. EST alleged that the sale of the Property constituted a fraudulent transfer under Section 548(a)(1)(B) (constructive fraud under the Bankruptcy Code) and Section 544 (constructive fraud under state law). Section 548(a)(1)(B) states "[t]he trustee [or a debtor-in-possession] may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer [] and

> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such

---

[96] *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (internal quotation marks omitted).

[97] *Id.*

[98] 5B Charles A. Wright et al., Federal Practice and Procedure Civil § 1357 at 409 (3d ed. 2004).

[99] *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quoting *McKinney v. Okla. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991) (internal citations omitted)).

transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.[100]

The elements for constructive fraud under Oklahoma law are virtually the same.[101] To state a claim, EST was required to assert facts to support four elements: (1) a transfer of an interest in property; (2) the transfer was made or incurred within two years before the date of the bankruptcy petition; (3) the debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) the debtor was insolvent on the date the transfer was made or became insolvent as a result of the transfer, or one of the balance sheet insolvency alternatives apply. Only the third and fourth elements are at issue here.

### 1. Allegations Regarding Reasonably Equivalent Value

First, EST argues that the bankruptcy court erred in *sua sponte* dismissing the Avoidance Counterclaims for failing to adequately plead reasonably equivalent value. The Bankruptcy Code does not define reasonably equivalent value, but it generally means that the debtor has received value that is substantially comparable to the worth of the transferred property.[102] An examination into reasonably equivalent value includes three inquiries: (1)

---

[100] 11 U.S.C. § 548(a)(1)(B).

[101] *Stillwater Nat'l Bank & Trust Co. v. Kirtley (In re Solomon)*, 299 B.R. 626, 633 (10th Cir. BAP 2003) ("[T]he Oklahoma UFTA and § 548 are identical, and cases construing the elements under § 548 are persuasive interpretations for the UFTA.").

[102] *In re Pringle*, 495 B.R. 447, 463 (9th Cir. BAP. 2013).

whether value was given; (2) if value was given, whether it was given in exchange for the transfer; and (3) whether what was transferred was reasonably equivalent to what was received.[103]

The Amended Counterclaim contained the following factual assertions:  1) the bankruptcy case was initiated on March 30, 2010;[104] 2) on or about October 11, 2007, EST and LTF entered into a Purchase Agreement for the sale of the Property for $3,000,000;[105] 3) "EST submits" that at that time and thereafter the Property was worth in excess of $1,000,000 more than the purchase price;[106] and (4) the sale closed in September 2008.[107]  The bankruptcy court rejected the assertion regarding the Property's value, describing it as the Debtor's opinion.[108]

After carefully reviewing the record, we are persuaded EST adequately pled lack of reasonably equivalent value.  When read together, the allegations in the Amended Counterclaim state that EST sold the Property for over $1,000,000 less than what it was worth.  Alleging such a deficiency plausibly supports an inference that EST did not receive reasonably equivalent value.[109]  Further,

---

[103]     *Id.*

[104]     Amended Counterclaim at 6, ¶ 7, *in* App. at 145.

[105]     *Id.*

[106]     *Id.*, ¶ 8.

[107]     *Id.*

[108]     Dismissal Order at 11, *in* App. at 298 ("The statement, 'EST submits that the LTF Acreage had a value in excess of $1,000,000 more than the Purchase Price at the time of the transfer,' is not a fact, but rather the Debtor's opinion.").

[109]     EST had also previously pled that its entire development property retained a market value of no less than $13,800,000 in "as is" condition at the Closing, the Property was nearly one-third of the development, thus its market value would be $4,337,000.  *See* EST's Motion for Summary Judgment on Counts II and III of the Amended Counterclaim at 6, ¶8, *in* App. at 167.  These assertions were supported by an affidavit executed by Edwin H. Hawes, III, EST's principal.  *Id.*, Affidavit in Support of Motion for Summary Judgment on Counts II and III of the Amended Counterclaim, *in* App. at 175-77.  Thus, the record before the bankruptcy court

(continued...)

prefacing an averment with "EST submits that" does not necessarily denote an opinion; "submits" is sometimes used in place of "contends." Even if EST's allegation regarding the Property's value may be an opinion, it is an opinion as to a fact. Factual allegations must generally be accepted as true when evaluating a motion to dismiss.[110] It is also well-established that an "owner of real property may testify as to the value of her property."[111] Prior to the closing of the sale, EST owned the Property. The bankruptcy court therefore erred in concluding EST failed to plead the element of constructive fraud relating to reasonably equivalent value.

### 2. Allegations Regarding Insolvency

The Bankruptcy Code defines insolvency as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation[.]"[112] In its Amended Counterclaim, EST alleged the following facts: (1) EST was insolvent or became insolvent as a result of the sale and transfer of the LTF Acreage; and (2) at the time of the transfer, EST was essentially illiquid and therefore was engaged in business for which any remaining property constituted unreasonably small capital. EST also included allegations that parroted the language in Section 548(a)(1)(B)(ii), which addresses the insolvency alternatives.

The bankruptcy court dismissed the Avoidance Counterclaims without

---

[109] (...continued)
also bolsters EST's claim that it received less than reasonably equivalent value.

[110] *ASARCO LLC v. Union Pac. R. Co.*, 755 F.3d 1183, 1188 (10th Cir. 2014) (In the context of a motion to dismiss, courts must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff].") (internal quotation marks omitted).

[111] *James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207, 1215 (10th Cir. 2011) (quoting *Turner v. Murphy Oil USA*, 759 F.Supp. 2d 854, 857-58 (E.D. La. 2011)).

[112] 11 U.S.C. § 101(32).

leave to amend after concluding *sua sponte* that such allegations were conclusory and insufficient to state a plausible claim under the insolvency element of constructive fraud. If this appeal presented a typical case where the only papers on file were the complaint and the motion to dismiss, we would be inclined to agree. A number of courts have acknowledged that threadbare allegations regarding a debtor's insolvency are insufficient to satisfy *Iqbal* and *Twombly*.[113] This holding is consistent with the purpose of *Iqbal* and *Twombly,* which is "to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, [and] also to inform the defendants of the actual grounds of the claim against them."[114]

In this case, however, the issue is not whether LTF had "fair notice of what the . . . claim is and the grounds upon which it rests" or whether EST's assertions regarding insolvency were "speculative."[115] On the contrary, the bankruptcy court had already entertained several motions, including a motion for summary judgment, and the record contained ample information regarding EST's prepetition financial condition. For example, EST had previously alleged that at the time of the transfer, its financial statements reflected it had a negative net

---

[113] *See, e.g., Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 752 (Bankr. E.D. N.C. 2009) (conclusory statement, that "[e]ach preferential transfer was made while the [t]ransferor was insolvent," without factual assertions in support of the debtor's insolvency fails to satisfy *Iqbal*'s first prong); *Waite v. Schoenbach*, No. 10 Civ. 3439, 2010 WL 4456955, at *7 (S.D.N.Y. Oct. 29, 2010) (Plaintiff's allegations that the "transfers were made without fair consideration" and "rendered Defendants insolvent" are conclusory allegations that are insufficient to withstand a motion to dismiss.);*Crescent Res., LLC v. Nexen Pruet, LLC (In re Crescent Res., LLC)*, No. 09-115-7, 2012 WL 195528, at *8 (Bankr. W.D. Tex. Jan. 23, 2012) (complaint that does no more than mirror the elements of §548, and contain only the dates, amounts, and names of transferee, along with general conclusory allegations of insolvency and reasonably equivalent value, held insufficient).

[114] *Robbins v. Okla.,* 519 F.3d 1242, 1248 (10th Cir. 2008).

[115] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

worth of nearly $1.3 million.[116] The record before the bankruptcy court at the time the Dismissal Order was entered also included EST's Balance Sheet near the time of the transfer, proffered in admissible form.[117] That balance sheet supports EST's insolvency allegation.

Courts generally limit their consideration to the "contents of the complaint when ruling on a 12(b)(6) motion," with the following exceptions: "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice."[118] A court may take judicial notice of its docket and the papers on file, as long as it does not accept the truth of the matters asserted in those papers.[119] At least one bankruptcy court has held that a conclusory allegation regarding insolvency was sufficient to withstand a motion to dismiss where the court previously heard ample evidence on the issue.[120] That case is persuasive because it gives effect to the purpose of *Iqbal* and *Twombly* -

---

[116]    *See* EST's Motion for Summary Judgment on Counts II and III of the Amended Counterclaim at 5, ¶6, *in* App. at 166.

[117]    *Id.*, 2008 Balance Sheet, *in* App. at 174.

[118]    *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). *See also* 5B Charles A. Wright et al., Federal Practice and Procedure Civil § 1357 at 376 (3d ed. 2004) (Courts are "not limited to the four corners of the complaint" and may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, . . . and items appearing in the record.").

[119]    *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979). *See also Baldwin v. Phillips*, No. 7-13-11987, 2014 WL 5363145, at *6 n.3 (Bankr. D. N.M. Oct. 21, 2014) (taking judicial notice of the docket in making findings); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201for the proposition that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] to take judicial notice of its own docket") (citation and internal quotation marks omitted).

[120]    *Official Comm. of Unsecured Creditors of TOUSA, Inc. v. Technical Olympic, S.A. (In re TOUSA, Inc.)*, 437 B.R. 447 (Bankr. S.D. Fla. 2010).

which is to eliminate implausible or specious claims - while allowing the parties some flexibility when pleading an issue that has previously been addressed.

We note that in most cases, the bankruptcy court is not required to scour the record for items that amplify a party's allegations, nor is it required to take judicial notice of its docket before ruling on a motion to dismiss. Where, however, a court has already entertained a motion for summary judgment and the papers on file contain ample evidence and allegations regarding insolvency, it is fairly unusual to dismiss a complaint *sua sponte,* and without leave to amend, for failing to adequately plead that very element. Under such circumstances, it is not "patently obvious that the plaintiff could not prevail on the facts alleged," or that "allowing . . . an opportunity to amend [the] complaint would be futile."[121] Thus, under the facts of this particular case, and in light of the Tenth Circuit's policy disfavoring *sua sponte* dismissals, we believe the bankruptcy court should have evaluated the sufficiency of EST's amended complaint in light of the previous filings in the record regarding insolvency. The bankruptcy court therefore erred when it dismissed the Avoidance Counterclaims under Rule 12(b)(6) *sua sponte* without granting leave to amend.

### 3. LTF's Arguments Regarding Dismissal of the Avoidance Counterclaims

LTF urges this Court to affirm the dismissal of the Avoidance Counterclaims on two alternative grounds: 1) EST failed to obtain leave from the bankruptcy court to file the Amended Counterclaim; and 2) the transfer did not involve property of the estate given the bankruptcy court's previous ruling. We reject the first argument because the bankruptcy court in effect granted leave to amend by explicitly reinstating the Amended Counterclaim after the appeal was

---

[121] *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (describing the circumstances under which *sua sponte* dismissal is appropriate) (internal quotations omitted).

dismissed. At that point, further leave to amend was unnecessary. We construe the latter argument to be directed at the futility of the proposed amendments. "The party opposing the proposed amendment bears the burden of establishing its futility."[122] We reject this argument as well because it fails to recognize that there were two transfers - a transfer of real property and a transfer of the Escrowed Funds for Improvements to the Property. The Avoidance Counterclaims sought to recover either the Property *res* or the full value of the Property, not the Escrowed Funds. The bankruptcy court's previous ruling related to the transfer of the Escrowed Funds, not a transfer of the Property itself. Section 548's scope includes property that would have been property of the estate but for the transfer. There is no real dispute that the Property was EST's but for the sale.

In sum, we conclude that the bankruptcy court erred in *sua sponte* dismissing the Avoidance Counterclaims under Rule 12(b)(6). Given the entire record available to the bankruptcy court at the time it ruled on the motion to dismiss, we are convinced EST stated plausible claims under Sections 548 and 544.

C. **Denial of EST's summary judgment motions and motion to stay deadlines**

The bankruptcy court initially denied EST's motion for summary judgment because EST failed to comply with Rule 7013 and first seek leave to file the counterclaims. It also denied EST's motion to reconsider that ruling. The bankruptcy court's subsequent reinstatement of the Avoidance Counterclaims, however, effectively vacated its ruling that leave to amend was required, making

---

[122] *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 661 (D. Kan. 2014). *See also Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 23 (1st Cir. 2014) ("The party defending the dismissal must show that 'the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless and beyond all hope of redemption.") (internal quotation marks omitted).

any appeal of it moot.

When the bankruptcy court reinstated the Avoidance Counterclaims, it also reinstated EST's summary judgment motion. It then denied the motion as moot based on its decision to dismiss the counterclaims. Our reversal of the bankruptcy court's dismissal of the Avoidance Counterclaims revives the issues raised in EST's motion for summary judgment. Because the bankruptcy court did not consider these issues on their merits, and because appellate courts generally do not consider issues not passed on below, it is appropriate to remand the case to the bankruptcy court to address these issues first.[123]

## CONCLUSION

For the reasons stated above, we AFFIRM IN PART and REVERSE IN PART. The bankruptcy court correctly determined the Escrowed Funds were not property of the estate. We AFFIRM the entry of the 2011 Summary Judgment, and order denying the motion to alter the 2011 Summary Judgment. The bankruptcy court's *sua sponte* dismissal of the Avoidance Claims for pleading deficiencies was erroneous. Accordingly, we REVERSE the Dismissal Order to the extent it dismissed the Avoidance Counterclaims and AFFIRM the balance. We DISMISS AS MOOT the appeal of the Counterclaim Amendment Order and the Counterclaim Reconsideration Order. Finally, we VACATE the Moot Orders and REMAND the case to the bankruptcy court to rule on issues raised in EST's motion for summary judgment and its motion to stay scheduling order deadlines.

---

[123] *N. Tex. Prod. Credit Ass'n v. McCurtain Cnty. Nat'l Bank,* 222 F.3d 800, 812 (10th Cir. 2000) ("As a general rule, [appellate courts] do not consider issues not passed on below, and it is appropriate to remand the case to the [lower] court to address an issue first."); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012) (vacating order denying motion to amend as moot because appellate court vacated grounds on which district court's dismissal was predicated).