## MARION MACHINE, FOUNDRY & SUPPLY CO. et al. v. FIRST NAT. BANK & TRUST CO. et al.

No. 24987. Feb. 18, 1936.

Rehearing Denied April 7, 1936.

Second Petition for Rehearing Denied July 1, 1936.

Hulette F. Aby, William F. Tucker, and Frank Settle, for plaintiffs in error.

James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, and Cyrus L. Billings, for defendant in error Gypsy Oil Company.

R. H. Hudson and Rayburn L. Foster, for defendant in error Independent Natural Gas Company.

PER CURIAM. This is a suit by Marion Machine, Foundry & Supply Company, a corporation, against the First National Bank & Trust Company, of Tulsa, Okla., G. E. Burgher Oil & Gas Company, Gypsy Oil Company, Independent Natural Gas Company, Exchange Drilling Company and others, from which the plaintiff, Marion Machine, Foundry & Supply Company, a corporation, and the defendant Exchange Drilling Company alone appealed.

The facts in this case, briefly stated, are substantially as follows:

On April 15, 1931, Paul R. Mills entered into a contract with J. Edward Jones by the terms of which Mills sold to Jones a one-half interest in a departmental oil and gas lease covering the west half (W. ½) of the southeast quarter (S. E. ¼) of section eighteen (18), township eight (8) north, range six (6) east, Seminole county, Okla., together with a completed well to the Wilcox sand, for which Jones agreed to pay $25,000, "which said sum is to be deposited in escrow and paid over to first party upon the drilling and completion of said well." The contract contained these provisions, among others:

"3. The first party (Mills), for and in consideration of said payment, is to drill, and/or cause to be drilled, a well on said property, completed to the Wilcox sand, which is usually found in that vicinity at a depth of 4,500 feet, and for the same consideration, does hereby assign to the second party an undivided half interest in and to said lease with said well drilled and completed thereon, free, clear and discharged from all laborers', materialmen's and mechanics' lien charges and assessments of any and all kinds whatsoever.

"4. Upon the drilling and completion of said well, as hereinabove set forth, the escrow agent is to deliver to the second party the assignment of the undivided half interest in and to said lease, and is to deliver to the first party, or to his assignee or assigns, the said sum of twenty-five thousand ($25,000) dollars deposited in escrow with said assignment.

"5. The first party is to furnish all fuel, water, labor, equipment and machinery necessary to drill and complete said well at his own cost and expense and when said well is completed to the Wilcox sand, as herein set forth, if oil or gas is not discovered in paying quantities in said well, the first party shall remove and retain all

property and equipment used in and about said well, and shall plug the said well at his own cost and expense. * * *

"11. This contract and agreement, subject to the limitations and conditions as to the assignment of the reservation of operations, as hereinabove set forth, shall inure to the benefit not only of the parties hereto, but to their respective heirs, personal representations, executors, administrators and assigns."

On April 22, 1931, Paul R. Mills entered into a contract with Burgher whereby he assigned to Burgher all of his interest in the above contract, including the $25,000 and the remaining one-half interest in the lease, in consideration of Burgher's agreement to drill and complete a well thereon to the Wilcox sand "free, clear and discharged from any and all claims of mechanics', laborers', materialmen's liens, and from any charges and assessments of whatsoever kind or nature." This contract further provided:

"3. It is further agreed - and understood that the assignment of the undivided half interest in and to said lease shall be placed in escrow with this agreement and with an assignment by first party of said contract, and that the same shall remain in escrow until the drilling and completion of said well, as aforesaid, and upon the drilling and completion of said well the said assignment of the contract attached hereto and the assignment of the half interest in the oil and gas mining lease. together with the twenty-five thousand ($25,000) dollars due under said contract attached hereto, shall be delivered to the second party. * * *

"5. The second party is to furnish all fuel, water, labor, equipment and machinery necessary for the drilling of said well, at its own cost and expense."

An escrow agreement was entered into between Mills, Jones, Burgher, and B. F. Barnett, of the First National Bank & Trust Company of Tulsa, whereby Barnett was designated escrow agent for the two contracts above referred to. The bank was later substituted as trustee. The fund involved in this case is a part of the $25,000 deposited by Jones; "no other or different sum of money was deposited." The assignments made by Burgher were of the above fund and its right to and interest therein was subject to the terms of the above contracts.

On June 2, 1931, Burgher executed and delivered to Marion the following letter, to wit:

"G. E. Burgher Oil & Gas Co.

"G. Ed Burgher, President.    June 2, 1931.

"Marion Machine Foundry & Supply Co.,
    "320 North Cheyenne,
        "Tulsa, Oklahoma

"Attention: Mr. Chamberlan    $775.00

"Gentlemen: Referring to the derrick purchased from you by us, on which there is a balance remaining unpaid of $750 plus an interest charge of $25, we wish to advise that we have moved this derrick from its previous location in 33-9-6 to a location in the Southeast Quarter of Section 18-8-6.

"There is a sufficient amount of money in escrow in the First National Bank of Tulsa, to cover the drilling of the well at the last named location. In line with verbal agreement of this date, we hereby authorize the sum of $775. be withheld and turned over to you by them as escrow agents on the completion of the above well when the full amount in their hands can be released.

"Dated this 2nd day of June, 1931.

        "Yours truly.

        "G. E. Burgher Oil & Gas Co.,

            "By G E. Burgher, President."

The above letter was presented to the First National Bank, and the following was indorsed upon it·

"Receipt of original of above letter acknowledged and its terms accepted subject to all the terms, rights and conditions of escrow agreement contracts, and other papers now held by us under our escrow file No. 3369.

        "The First National Bank and Trust Company of Tulsa, Oklahoma,

            "By E. M. Carter, Asst. Cashier."

On June 2, 1931, Burgher executed and delivered to Independent a letter addressed to the First National Bank, Tulsa, to wit:

"G. E. Burgher Oil & Gas Co.

"G. Ed Burgher, President.    June 2, 1931.

"First National Bank,
    "Tulsa, Oklahoma.

        "Attention: Mr. B. F. Barnett.

"Dear Sir: We attach hereto copy of contract with the Independent Natural Gas Company covering purchase of gas for fuel in the drilling of our well in the southeast quarter of section 18-8-6, and we wish to hereby authorize and request that you withhold the sum of $2,000. from such money now held in escrow by you to insure the payment of such amount as may be due them for

such gas and the return of their pipe at the completion of the above well.

"Very truly yours,
"G. E. Burgher Oil & Gas Co.,
"G E. Burgher, President."

This letter was delivered to the bank on the same day.

On June 17, 1931, Burgher executed and delivered to Gypsy a letter addressed to the First National Bank of Tulsa, to wit:

"G. E. Burgher Oil & Gas Co.
"G. Ed Burgher, President.    June 17, 1931
"First National Bank,
"Tulsa, Oklahoma.

"Attention: Mr. B. F. Barnett.

"Dear Sir: Referring to the money held in escrow by you in connection with the drilling of a well in the Southeast Quarter of Section 18-8-6, we wish to hereby author-ize and request that you withhold the sum of $1,200 from such money for the benefit of the Gypsy Oil Company to cover payment for water being purchased from them in the drilling of the above well.

"Very truly yours,
"G. E. Burgher Oil & Gas Co.,
"By G. E. Burgher."

The letter was presented to the bank on June 17, 1931, and the following was in-dorsed thereon:

"June 17, 1931. Accepted subject to all terms and conditions of escrow agreement referred to

"E. M. Carter.
"Asst. Cashier"

It will be noted that none of the above instruments is an assignment, but that all are orders to pay out of the fund held by the bank. They amount to equitable assign-ments. Wasco County v. New England Equitable Insurance Co. (Ore.) 172 P. 126, L. R. A. 1918D, 732. The Marion assignment was given in consideration of a balance owed by Burgher to Marion on an open account for a rig sold to Burgher on February 27, 1931.

The Independent assignment, as it re-flects on its face, was given to insure the payment for gas furnished by Independent to drill the well required by the foregoing con-tracts. The gas was furnished in reliance upon this assignment, of the value of $2,-916.59.

The Gypsy assignment was given, as it shows on its face, to cover payment for water furnished by Gypsy for the drilling of the above mentioned well. The water was furnished, of a total value of $1,180.

After the issues were all joined between the plaintiffs in error and the defendants in error, and several others who were parties to the suit in the lower court, and who have not appealed from the judgment of the low-er court and consequently are not parties in this court, the case was tried in the dis-trict court on the 16th day of January, 1933, both issues of law and fact being sub-mitted to the court, and a judgment was rendered in favor of the Gypsy Oil Company and the Independent Natural Gas Company, and it is from this judgment that the Marion Machine, Foundry & Supply Company and Exchange Drilling Company appeal. It is agreed that there is $2,614.50 in the First National Bank & Trust Company of Tulsa, Okla., the same being the amount unex-pended of the original $25,000 deposited in escrow in said bank, as per contracts refer-red to in the statement.

There are two questions to be determined in this case: First, (a) Was the fund re-maining on hands in the bank subject to the assignment of the Marion Machine, Foun-dry & Supply Company? and (b) Did the Marion Machine, Foundry & Supply Com-pany procure the first assignment? and (c) if they did, Did they have a first lien upon said funds to the amount of their claim? Second, Was the $25,000 which was origin-ally deposited in the bank for a specific pur-pose?

It is the contention of the plaintiffs in error, and we think that the evidence sup-ports this contention, that the plaintiffs in error procured the first assignment of the funds from G. E. Burgher Oil & Gas Com-pany to the amount of their claims, and that they were first presented to the bank for payment, and that by reason thereof they have an equitable lien on the funds remain-ing in the bank, to the extent of their claims, and in support of their contention they cite a great number of cases, among which are the following: Jack v. National Bank of Wichita, 17 Okla. 430, 89 P. 219; Citizens National Bank of Chickasha v. Mitchell et al., 24 Okla. 488, 103 P. 720; Market National Bank et al. v. Raspberry, 34 Okla. 243, 124 P. 758; 5 C. J. 953 to 955.

But in none of the cases cited by the plaintiffs in error were there such limita-tions upon the funds in question as are in the case at bar, and for this reason we do

not think the cases cited are applicable herein.

The contention of the Marion Machine, Foundry & Supply Company would be sound if the money in question had been the money of the G. E. Burgher Oil & Gas Company, but from the evidence in this case we cannot agree that this money, at the time the Marion Machine, Foundry & Supply Company and the Exchange Drilling Company procured their assignments, belonged to the G. E. Burgher Oil & Gas Company. The G. E. Burgher Oil & Gas Company had no right to this fund until they had complied with their contract, and said contract not having been complied with, the fund in question was not available for the purpose of assignment by G. E. Burgher Oil & Gas Company to the plaintiff in error Marion Machine, Foundry & Supply Company.

The Exchange Drilling Company, who drilled the well, apparently waived their right to the balance of said fund remaining in the bank when they received the $16,000 from the bank, but whether they waived their right or not, they had the same rights under the original contract as did the Gypsy Oil Company and the Independent Natural Gas Company, for the reason that their claims were to be paid and liquidated before the G. E. Burgher Oil & Gas Company had any right to participate in the $25,000. We do not think it necessary to pass upon the question here as to whether or not the Exchange Drilling Company waived their right to funds remaining in the bank and which are the subject of this litigation. They have drawn $16,000 from said fund, and the fund remaining in the bank being wholly insufficient to pay all of the creditors who had claims arising out of the drilling of the well, this fund should be distributed pro rata among the other creditors who helped to drill said well. The Exchange Drilling Company had received more than their pro rata part of said funds, and by reason thereof are not entitled to participate in any distribution of the funds remaining in the bank.

We come now to the question, Was the $25 000 originally deposited in the bank a limited fund, and was it created for a specific purpose? We think it was. The contract, a portion of which has been quoted herein, uses this language:

"When said well has been drilled and completed thereon, free, clear and discharged from all laborers', materialmen's and mechanics' lien charges and assessments of any and all kinds whatsoever."

The evidence in this case shows that the claim of the Gypsy Oil Company was for gas furnished in the drilling of said well, both by virtue of contract. No question has ever been raised as to the correctness of said claims, that is, that the amount claimed by the Gypsy Oil Company and the Independent Natural Gas Company are not true and correct.

In the case of Greenville Savings Bank v. Lawrence (4 C. C. A.) 76 Fed. 545, this court held:

"Where, in a contract for the erection of a public building, the United States reserves the right to withhold a part of the money in case the contractor fails to pay claims for material and labor, the contractor cannot, by an assignment of moneys so withheld, give the assignee any standing to participate in the fund, until all labor and material claims have been paid."

In speaking of the respective rights of the laborers and materialmen and the assignee of the contractor, the court said:

"Obviously, as against labor and material claims, the assignees of Lawrence could have no standing to participate in the fund. It was a fund withheld under the stipulation of the contract for a particular class of creditors, to which mere assignees of the fund do not belong, and the rights of such assignees, if they have any, must be postponed until the creditors who have a special equity are paid."

Our own court has very aptly stated the rule in the case of Hoggson Bros. et al. v. Dickason-Goodmen Lumber Co., 81 Okla. 31, 196 P. 686, wherein it lays down the rule:

"Where a contract is made for the erection of a building, the contract price for the erection thereof constitutes a fund from which the subcontractors and those furnishing material to, or performing labor for, them are to be paid for their material and labor, and it is the duty of the owner and principal contractor to see that such fund is properly distributed to the persons entitled thereto."

The bank's acceptance of the assignment, or letter given to the plaintiff in error by the G. E. Burgher Oil & Gas Company is sufficient to put the plaintiff in error upon notice that his claim could not be paid until the well was completed and the funds in the bank released. There is no evidence in this record to show that the fund in the bank was ever released; it could not be released without the consent of all the parties who had claims against it growing out of the drilling of the well, or until all of the

claims had been fully paid as provided in the contract.

Another case which we think is controlling is the case of Smith v. Anglo-California Trust Co. (Cal.) 271 P. 898, wherein the court said:

"What we have said, however, need not necessarily prove fatal to the cause of the appealing mechanic's lien claimants if there exists any special circumstances warranting the imposition in their favor of a charge or lien upon the fund now in dispute. We are of the view that the money remaining undisbursed in the building loan account opened in Smith's name by the securities company should, in accordance with established principles of equity, be so charged."

From a careful review of all of the evidence in this case, there is no question but what this fund was created and placed in the bank for a specific purpose. That purpose was to pay all claims for the drilling and completion of a well on the property in question that could become a lien against said property, and until these claims were all paid and the fund released, the G. E. Burgher Oil & Gas Company had no right to assign any portion of said fund to any outside creditor. We are of the opinion that the judgment entered by the trial court is correct, and is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys Thos. W. Champion and H. H. Brown in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Champion and approved by Mr. Brown, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur.