FILED
United States Court of Appeals
Tenth Circuit

October 19, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re:

EXPERT SOUTH TULSA, LLC,

      Debtor.

-------------------------------------

LTF REAL ESTATE COMPANY, INC.,

      Plaintiff Counter Defendant -
      Appellee,

v.

EXPERT SOUTH TULSA, LLC,

      Defendant Counterclaimant Cross
      Claimant - Appellant,

v.

FIRST AMERICAN TITLE
INSURANCE COMPANY,

      Defendant Cross Claim
      Defendant.

No. 15-3000
(BAP No. 14-009-KS)
(BAP)

**ORDER AND JUDGMENT**[*]

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.

Everyone before us accepts that all of a debtor's legal and equitable property interests automatically become part of the bankruptcy estate once a bankruptcy case gets underway. The question we face in this case is what property interest this debtor, Expert South, possessed under an Oklahoma escrow agreement at the time it entered bankruptcy.

The question comes to us this way. LTF purchased from Expert South an undeveloped commercial site in Tulsa where it wanted to operate a health club. As part of the deal, Expert South agreed to make a number of improvements to the site (build an internal roadway, grade the property, and the like). To guarantee the improvements would get done, LTF asked Expert South to escrow money with a third party. Expert South agreed. Under the terms of the parties' agreement, Expert South's work was divided into segments and the company could recover portions of the escrow funds each time it completed a segment. The problem is, Expert South entered bankruptcy before it finished the work — in fact, before it completed even a single segment. The news of Expert South's bankruptcy induced LTF to file an adversary proceeding in bankruptcy court seeking a declaration that the escrow funds were not property of the bankruptcy estate. At summary judgment, the bankruptcy court granted LTF relief and a

2

bankruptcy appellate panel affirmed in relevant part. It's this result Expert South now asks us to reverse.

Guiding our inquiry are elements of both federal and state law. Under federal law, a bankruptcy estate includes all of the debtor's "legal or equitable interests" in property at the time the bankruptcy action begins. 11 U.S.C. § 541(a)(1). No doubt this is a capacious definition, suggesting that even a debtor's nonpossessory, contingent, partial, derivative, and speculative property interests and causes of action convey to the bankruptcy estate. *See, e.g.*, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983). Still, under this statutory provision a bankruptcy estate succeeds only to the property interests the debtor actually possessed. And to define those interests — their existence and extent — federal bankruptcy law usually relies on and requires us to reference state property law. *See Butner v. United States*, 440 U.S. 48, 55-57 (1979).

With this much in mind, we can reject the one argument Expert South has fairly presented in this case. Throughout this litigation it has argued that the escrow funds were fully (legally and equitably) its own at the time of its bankruptcy and so necessarily conveyed to its bankruptcy estate from its inception. But that much seems to us clearly wrong. Where (as here) a party places money into escrow under an agreement for the protection of someone else, the money remains in the possession and control of a third-party escrow agent, and the escrowing party is entitled to receive the funds (or some portion of them)

3

only after fulfilling certain conditions as yet unmet at the time of the bankruptcy, we are confident that Oklahoma courts would hold that the escrowing party does not retain an unqualified interest in the funds. *See generally Marion Mach., Foundry & Supply Co. v. First Nat'l Bank & Trust Co. of Tulsa*, 58 P.2d 900 (Okla. 1936); *Fouts v. Foudray*, 120 P. 960 (Okla. 1912). Neither should this result come as much of a surprise: courts faced with similar escrow agreements, similar unsatisfied contingencies, and similar state law regimes have reached similar conclusions. *See, e.g.*, *Dzikowski v. NASD Regulation, Inc.* (*In re Scanlon*), 239 F.3d 1195, 1198-99 (11th Cir. 2001); 5 Collier on Bankruptcy ¶ 541.09[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2015) (collecting cases).

Having said that much, we take care to emphasize what we haven't said and don't mean to say.

First, we don't mean to suggest that a party escrowing funds in Oklahoma lacks a contingent equitable interest in the funds, a cause of action to secure their release under appropriate circumstances, or even legal title to the funds — all of which it might convey to a bankruptcy estate at the inception of a bankruptcy case. In this case we just aren't fairly presented with any question along these lines. Instead, we are asked to pass only on the contention that all legal and equitable interest in the escrow funds in this case transferred, unqualifiedly, to the bankruptcy estate.

4

Second, we do not mean to suggest that some uniform federal rule precludes the possibility that escrow funds can ever convey to a bankruptcy estate at its inception. The decision of the bankruptcy appellate panel might be read (perhaps mistakenly) as suggesting such a rule. *See LTF Real Estate Co. v. Expert S. Tulsa, LLC* (*In re Expert S. Tulsa, LLC*), 522 B.R. 634, 647 (B.A.P. 10th Cir. 2014) (seeming to suggest such a rule as a matter of "federal bankruptcy law"). But it's state law that normally defines the existence and extent of a debtor's property interests that flow into the bankruptcy estate when it opens. And we concede at least the theoretical possibility that different parties may draft different escrow agreements that may yield different conclusions about a debtor's rights to escrow funds under different state law regimes. Our analysis here concerns only the property law of Oklahoma as applied to the facts and argument before us.

Finally, in saying that the escrow funds here weren't fully, legally and equitably, part of the bankruptcy estate at the time the bankruptcy case began we don't mean to suggest that they couldn't become fully part of the estate later. After all, an estate's contingent interest in escrow funds may mature into a current right to possession if the escrow agreement's contingencies are satisfied after the bankruptcy begins. *See, e.g.*, *Wilson v. United Sav. of Tex.* (*In re Missionary Baptist Found. of Am., Inc.*), 792 F.2d 502, 506 (5th Cir. 1986). But

Expert South again attempted no argument along these lines in the bankruptcy court and so we decline to pass on the question.

We acknowledge that Expert South has attempted arguments along some of these more nuanced lines in its appellate briefing. But the firm made no effort to present them to the bankruptcy court in the first instance and it offers no persuasive reason for its failure to do so. Accordingly, any contention along any of these axes was forfeited and lies beyond the proper scope of this appeal. *See, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).

To be sure, the company tells us that if only it had more discovery before summary judgment it might have been able to develop more and better arguments before the bankruptcy court. But to delay a ruling on a summary judgment motion in favor of more discovery, it's well known that a party must file an affidavit under Federal Rule of Civil Procedure 56(d) explaining "why facts precluding summary judgment cannot be presented" currently. *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992). "This includes identifying the probable facts not available and what steps have been taken to obtain these facts. . . . [T]he nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact." *Id.* (internal quotation marks omitted). Unless the court receives notice of that kind, there can be "no abuse of discretion" in proceeding to rule on a fully briefed summary judgment motion that "is otherwise appropriate" as a matter of law.

6

*Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986).

It's clear to us that the affidavit Expert South submitted to the bankruptcy court in this case as part of its summary judgment papers failed to comply with any of these requirements. Coming not from a lawyer working on the matter but from Expert South's principal, Expert South's affidavit set forth a large number of uncontested facts about the parties' escrow arrangement — just as any party might when opposing summary judgment in the normal course. The affidavit's sole allusion to discovery came only at the end of the document, and even there the firm's principal stated merely that the firm "intends to conduct discovery in this action upon the existence of authorization to do so." This indication of present intention does not come close to explaining why summary judgment would be inappropriate, what discovery might be expected to show, what steps the company had already taken to try to secure necessary information, or what additional time might be required. Neither is it obvious to us that Expert South might have said anything persuasive on any of those questions, for we have a hard time imagining how additional fact discovery would have aided Expert South in presenting more nuanced legal arguments concerning its own escrow agreement and performance — facts that were already well known to it. In these circumstances, we simply cannot say the bankruptcy court abused its discretion in proceeding to rule on the single legal question put to it.

The judgment is affirmed.

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge