**IN RE: Kelly Sue PURCELL (nka Busby), Debtor.**

**Case No. 08–40224–13**

United States Bankruptcy Court, D. Kansas.

Signed 07/19/2017

Jill A. Michaux, Neis & Michaux PA, Bankruptcy Law Office, Topeka, KS, for Debtor.

Jan Hamilton, Topeka, KS, for Trustee.

Jordan M. Sickman, Office of U.S. Trustee, Wichita, KS, for U.S. Trustee.

### Order Denying Trustee's Motion for Turnover and Directing Clerk to Re–Close Case

Janice Miller Karlin, United States Chief Bankruptcy Judge

This matter is before the Court on Chapter 13 Trustee Jan Hamilton's Motion for Turnover; he seeks turnover of settlement proceeds that Debtor Kelly Sue Purcell[1] is entitled to receive as a result of a class action lawsuit filed in December 2013.[2] While the Court frequently sees turnover motions, this one is unique because it was filed more than five years after Debtor received her discharge and her case was closed, and the settlement in question is based on a cause of action that Debtor was unaware she had until well

---

1. Doc. 118. Since filing, Debtor has changed her last name to Busby.

2. *Id.*

after her case was closed. However, the medical procedure giving rise to the ultimate cause of action occurred while the bankruptcy case was still (barely) open, thereby requiring the Court to determine, in the first instance, whether Debtor's cause of action (resulting in the settlement proceeds) is even property of the estate under 11 U.S.C. § 541.[3]

Because the Court finds that the cause of action did not arise until she discovered the potential injury caused by the device, and that discovery occurred after her bankruptcy case was closed, the settlement proceeds are not property of the estate.

## I. Findings of Fact

### A. Factual history.

The parties have stipulated to the following facts.[4] Debtor filed her Chapter 13 petition for bankruptcy relief in March 2008. The Court confirmed Debtor's plan with a 36-month applicable commitment period, she successfully completed her required plan payments in April 2011, and an order of discharge was entered on September 23, 2011. The Trustee filed his Final Report in October 2011, and Debtor's case was then closed on the same date the final decree was entered—November 30, 2011.

Five days after her discharge, on September 28, 2011, Debtor underwent a medical procedure in which a transvaginal mesh device ("pelvic mesh device") was implanted. In the ensuing months, Debtor had several follow-up visits with physicians. No problems with the pelvic mesh device were discovered or disclosed to Debtor during these visits. A portion of

the pelvic mesh was removed on April 18, 2012, but Debtor's doctor again reported no defect in the medical device itself.

But in January 2013, Debtor apparently began to experience problems, so Debtor's physician referred her to a specialist. In February 2013, Debtor consulted with that specialist, who discovered through the use of a cystoscope that there was some mesh exposure. This was the first indication of any problem with the device itself. The specialist apparently recommended to Debtor to have surgery to remove the device, and the surgery to do so occurred on April 8, 2013. Significantly, the parties stipulate that on that date "[f]or the first time, a failed transvaginal mesh sling was discovered and diagnosed. (495 days after the bankruptcy case was closed.)"[5]

Soon after this third surgery, Debtor saw a television commercial regarding pelvic mesh device failure. She contacted counsel eleven days after this third surgery and retained a firm to represent her in a claim against the manufacturer of the pelvic mesh device in a multi-district class action litigation. While Debtor has reached a settlement agreement with the manufacturer of the device, the parties' stipulation does not reveal the net amount or the timeline for disbursement.

### B. Procedural history.

The United States Trustee filed a motion to reopen Debtor's case upon learning of the pending personal injury settlement.[6] The Court granted the motion with the proviso that a party in interest file a pleading addressing the settlement funds within 60 days.[7] The Chapter 13 Trustee

---

3. Unless otherwise stated, all future citations are to Title 11 of the United States Code (the Bankruptcy Code, 11 U.S.C. 101, et. seq.).

4. Doc. 134.

5. Doc. 134.

6. Docs. 105.

7. Doc. 109 ("A party in interest must file a motion or other pleading to justify keeping the case open, within 60 days, or the Clerk is ordered to re-close the case based on the assumption the estate has declined to pursue settlement funds").

then filed this Motion for Turnover.[8] The parties have stipulated that the only issue for the Court's consideration is: "Whether the product liability cause of action for personal injuries to debtor and resulting settlement between the debtor and the manufacturer of a medical device that is the subject of the Trustee's Motion for Turnover of Settlement Proceeds is property of the Debtor's bankruptcy estate."[9]

Because this issue exists in several other newly reopened cases pending before this Court—although those cases are still in the fact-finding stage—the Court invited the parties in those cases to submit amicus briefs on this limited legal issue.[10] The Court appreciates, and has fully reviewed, the amicus briefs filed by the debtors in two other cases.[11]

## II. Analysis

The Court has jurisdiction to decide this matter, and it is a core proceeding.[12]

### A. Burden of proof.

 In a motion for turnover, the burden falls upon the Trustee, as the moving party, to establish a *prima facie* case that the property sought is property of the estate.[13] If the Trustee establishes a *prima facie* case, the burden of proving an exception shifts to the debtor.[14] The Trustee must carry his burden by a preponderance of the evidence.[15]

### B. Whether the class-action settlement proceeds are property of the estate.

The filing of a bankruptcy petition creates an estate; property that is included in the estate is broadly defined in § 541(a)(1)

---

8. Doc. 118.

9. Doc. 139. The parties agreed to reserve other issues, including whether Debtor might have other defenses to turnover and whether her counsel should be entitled to fees as an administrative expense, in the event the Court were to decide the threshold issue in Trustee's favor. *See* Doc. 139.

10. Doc. 137

11. Docs. 140 (*amicus* brief of interested parties Brian Allen Murphy and Felecia Lyn Murphy, *In re Murphy*, No. 07–40859), 141 (*amicus* brief of interested party Myrna Lynn Castle, *In re Castle*, No. 01–23359).

12. 28 U.S.C. § 157(b)(1) (jurisdiction to hear core proceedings); § 157(b)(2)(E) (orders for turnover of property of the estate are core proceedings); 28 U.S.C. § 1334.

13. *In re Studstill*, No. 11-40582, 2011 WL 6208919, at *2 (Bankr. D. Kan. 2011) (in a motion for turnover, Trustee has burden to prove that the property sought is property of the bankruptcy estate and debtor was in possession when case was filed); *In re Spencer*, 362 B.R. 489, 490 (Bankr. D. Kan 2006) (in a

motion for turnover the "trustee has the burden to prove that the property sought is in fact property of the bankruptcy estate"); *In re McDonald*, 353 B.R. 287, 290 (Bankr. D. Kan. 2006) ("The Trustee, as the moving party, bears the burden of proof in this turnover action and must at least establish a *prima facie* case. After that, the burden of explaining, or going forward, shifts to Debtors, but the ultimate burden or risk of persuasion is upon the Trustee.") (citations omitted).

14. *McDonald*, 353 B.R. at 290.

15. *In re Lee*, 415 B.R. 518, 523 (Bankr. D. Kan. 2009) (burden is on trustee, as moving party, to show property belongs to the bankruptcy estate; and finding that under *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), preponderance of evidence standard is applicable to most, if not all, disputes in bankruptcy cases); *United States v. Krause (In re Krause)*, No. 05-17429, 2009 WL 243398, at *10–11 (Bankr. D. Kan. 2009) (after noting inconsistent decisions regarding burden and standard of proof in turnover actions, court held that the trustee has burden of proving, by a preponderance of evidence, that property is of the bankruptcy estate); *McDonald*, 353 B.R. at 290.

to include "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 1306(a)(1) expands the property included in Chapter 13 cases to include property "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted."

Even without the expansion of property of the estate created by § 1306 for Chapter 13 cases, contingent interests that exist upon filing, but that do not fully materialize until after filing, have long been held to be property of the estate.[16] In *Segal v. Rochelle*,[17] the United States Supreme Court held that a debtor's tax refund that was received postpetition was property of the estate, because the refund was for business losses suffered prepetition and was "sufficiently rooted in the pre-bankruptcy past" to be included as property of the bankruptcy estate.[18] *Segal* concerned the 1898 Bankruptcy Act, but in enacting § 541, Congress intended to incorporate *Segal*'s holding.[19]

■ However, although § 541(a)(1) defines property of the estate as including "all legal or equitable interests of the debtor *in property* as of the commencement of the case," [20] neither § 101 (which contains definitions used in the Code) nor § 541 define "property." The Supreme Court

confronted that omission head-on in *Butner v. United States*.[21] It recognized the constitutional authority of Congress to specifically enact a statute that would provide such a definition, but found that in the absence of such statutory authority, state law regarding property interests would control.[22]

■ So for example, while Congress elected to affirmatively include a debtor's interest in rental income in the definition of property of the estate, it has not similarly opted to expressly include a debtor's postpetition legal claim as property of the estate.[23] As a result, and because property interests for Kansas debtors are created by Kansas law, Kansas law governing when a cause of action accrues controls.[24]

■ The accrual of Debtor's interest in the product liability claim for personal injuries is controlled by K.S.A. § 60–513. This statute establishes a two-year statute of limitations for most torts.[25] Importantly, this statute of limitations is tolled in cases in which the fact of injury is not immediately ascertainable. In such cases, the cause of action does not accrue

"until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the

16. *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

17. *Id.*

18. *Id.*

19. *See Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516, 1518 (10th Cir. 1991) (discussing Congress's affirmative adoption of *Segal* in § 541).

20. (emphasis added).

21. 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

22. *Id.* at 55, 99 S.Ct. 914; see also *In re Bryant Manor, LLC*, 422 B.R. 278, 288

(Bankr. D. Kan. 2010) (recognizing Congress's post-*Butner* amendment of § 541(a)(6) to specifically include in property of the bankruptcy estate interests in rents and profits earned by property).

23. § 541(a)(6); *Bryant Manor*, 422 B.R. at 288.

24. *Butner*, 440 U.S. at 54–55, 99 S.Ct. 914; *In re Smith*, 293 B.R. 786, 789 (Bankr. D. Kan. 2003).

25. K.S.A. § 60–513(a) (actions limited to two years).

initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." [26].

This is commonly referred to as the discovery rule, or theory,[27] in contrast with the conduct theory, in which the date of the action giving rise to the injury defines the accrual of the cause of action, irrespective of actual discovery.[28]

■ The distinction between a claim of the estate and a claim against the estate is important, however, because while Congress has not opted to preempt state law in defining property interests *of* the estate, it has defined "claims" *against* the estate.[29] *In re Smith*, a case with substantially similar facts and cited by both parties, discussed this distinction.[30] There, debtor had taken a (later banned) weight-loss medication, Fen–Phen, before she filed her Chapter 7 bankruptcy case, but commenced litigation and reached a settlement agreement with the manufacturer after she received her discharge and her case was closed.[31] The Trustee moved for an order directing the debtor to turn over the proceeds.[32]

The *Smith* decision noted the scope of the definition of "claim" in § 101(5) as pertaining to a bankruptcy claim, i.e., a claim against the estate, and recognized that an interest could be a bankruptcy claim under the Code even if not recognized as such under state law.[33] On the other hand, a debtor's interest in a potential claim was determined and defined by state law and could not become property of the estate if it did not exist as of the commencement of the case.[34] Relying on K.S.A. § 60–513, *Smith* found that the debtor's cause of action had not accrued until she discovered her injury, which was well after discharge. As a result, the court held that the settlement proceeds were not property of the estate and denied turnover.[35]

The Trustee relies on *In re Parker*, where the Tenth Circuit broadly stated that the conduct theory controls the date of accrual of a claim.[36] But the facts of that case are clearly distinguishable. Parker, a lawyer, failed to include a former client as a creditor in his no-asset Chapter 7. The client then brought a legal malpractice claim against him for his actions and/or omissions before he filed bankruptcy. The bankruptcy court allowed him to reopen his case to amend his schedules to include the client as a creditor, and ultimately declared that her claim against him was a prepetition claim because it revolved around his failure to respond to a show cause order resulting in the dismissal of her federal court case six months before he filed bankruptcy.

26. K.S.A. § 60–513(b). This is subject to an absolute limit of 10 years from the date of the conduct, regardless of when the fact of injury was discovered. *Id.*

27. *Smith*, 293 B.R. at 789.

28. *Watson v. Parker (In re Parker)*, 313 F.3d 1267, 1269 (10th Cir. 2002) (defining conduct theory and holding that the Tenth Circuit uses the conduct theory in determining when a claim *against* the estate has accrued).

29. § 101(5); *Smith*, 293 B.R. at 789 (*citing Swift v. Seidler (In re Swift)*, 198 B.R. 927, 936 (Bankr. W.D. Tex. 1996)).

30. 293 B.R. at 788.

31. *Id.*

32. *Id.* at 787.

33. *Id.* at 789 (*citing In re Swift*, 198 B.R. at 936).

34. *Id.*

35. *Id.* at 789–90.

36. Doc. 118; *In re Parker*, 313 F.3d at 1269.

At no point in its decision did the Tenth Circuit discuss, let alone differentiate, between cases involving claims *against* a bankruptcy estate as opposed to claims a debtor or his estate might have that would bring assets into the estate.[37] And this Court has found no Tenth Circuit case deciding that precise issue. As a result, the Court finds that *Parker*'s analysis is inapposite to the facts of this case and elects not to adopt the "conduct theory" under these facts.

The Trustee also cites an unreported decision from the Kansas District Court, *Shields v. U.S. Bank Nat'l Ass'n ND*,[38] which in turn cited to *Parker* to support its conclusion that the plaintiff/former debtor did not have standing to assert a claim it ultimately concluded belonged to the plaintiff/former debtor's bankruptcy estate.[39] However, a closer look at *Shields* is warranted, as that Court did not expressly adopt the conduct theory in dismissing the claims.

The plaintiff in *Shields* had filed a Chapter 7 bankruptcy petition in 2002, at which time he did not list any claims, contingent or otherwise, against U.S. Bank. In 2005, he brought an action against the bank, claiming it had violated various statutes in its treatment of, and reporting about, his HELOC account with the bank. The bank moved for summary judgment, alleging that Shields lacked standing to bring the claims, as they were prepetition claims

that belonged solely to his bankruptcy estate.[40]

The Court granted the motion, holding that under the "unique circumstances of this case," all the claims touched the pertinent checking account and Reserve Line, making them "sufficiently rooted" in the bank's initial (prepetition) acts, such that they belonged to the bankruptcy estate.[41] It is significant that in using that language, it relied on *Segal* (not *Parker*).[42]

Turning to the case law upon which Debtor and the *amicus* parties rely, all cite to two recent decisions in *In re Ross* (one from the bankruptcy court and one from the district court hearing the matter on appeal).[43] This is one of the only reported cases involving a debtor's post-discharge receipt of settlement funds in a pelvic mesh medical device suit. There, the Bankruptcy Court for the Eastern District of New York applied New York law and found that the debtor's cause of action did not exist at the commencement of her Chapter 7 case—because the debtor had not discovered the potential damage—and thus was not property of her bankruptcy estate.[44]

On appeal, the district court reached the same result, but only after rejecting the bankruptcy court's reasoning.[45] The district court did not engage in any analysis of *Butner* or applicable New York law, and instead held the bankruptcy court should have looked only to the Supreme Court's analysis in *Segal* to determine whether the

---

**37.** 313 F.3d at 1270.

**38.** No. 05–2073, 2006 WL 3791320 (D. Kan. 2006).

**39.** *Id.* at *5 n.4.

**40.** *Id.*, at *1.

**41.** *Id.* at *6.

**42.** *Id.* (*citing Segal*, 382 U.S. at 380, 86 S.Ct. 511).

**43.** 548 B.R. 632, 638–40 (Bankr. E.D.N.Y. 2016); *Mendelsohn v. Ross*, No. 16-CV-2071, 251 F.Supp.3d 518, 2017 WL 1900288 (E.D.N.Y. May 9, 2017); Docs. 133, 140, 141.

**44.** *Ross*, 548 B.R. at 638–40.

**45.** *Ross*, 251 F.Supp.3d at 523–25, 2017 WL 1900288, at *4–5.

debtor's claim was "sufficiently rooted in the pre-bankruptcy past." [46] Regardless of the analysis, the district court ultimately affirmed the bankruptcy court's decision to deny the Chapter 7 trustee's motion to reopen the case to administer the asset, finding that the debtor's claim arose post-petition, was not sufficiently rooted in debtor's pre-bankruptcy past, and thus was not property of the estate. [47]

In *Ross*, the District Court did not disagree with the bankruptcy court's analysis of whether the claim had arisen under state law, but said that the bankruptcy court's analysis was incomplete because it failed to take into account whether the underlying facts giving rise to the claim were sufficiently rooted in the pre-bankruptcy past. [48] Indeed, the findings of some courts seem to suggest that *Segal*'s "rooted in the bankruptcy past" analysis is the sole determining factor. [49]

■ In the Tenth Circuit, the *Segal* analysis has arisen almost exclusively in a Chapter 7 context. [50] This makes sense; in a Chapter 7, the line of demarcation between pre and post-bankruptcy has greater significance than in a Chapter 13 case. This is because a Chapter 7 case does not have the expanding effect of § 1306 to bring postpetition property into the estate.

■ Under either Chapter 7 or 13, however, in order for property to belong to the bankruptcy estate, it must first be property of the debtor. The Tenth Circuit has consistently cited *Butner* and turned to state law to determine whether something is property. [51] *Butner* and *Segal* do not conflict. Instead, they answer different questions—*Butner* answers *what* is property under state law, while *Segal* determines whether that interest *existed* before the debtor filed his bankruptcy petition.

In *Parks v. Dittmar*, [52] the Tenth Circuit applied both the *Butner* and *Segal* analyses to determine whether those Chapter 7 debtors' employee stock appreciation rights (SARs) were property of the estate. The Circuit held that the proper test was: (1) whether the debtors had a property interest under Kansas law; (2) whether that interest existed before the filing of the bankruptcy petitions; and (3) whether those interests were property of the bankruptcy estate under § 541. [53] The court found that the SARs were property of the estate because the debtors' legal interest existed pre-bankruptcy, despite the fact

---

46. *Id.* at 525–26, at *6.

47. *Id.*

48. *Id.*

49. *Shields*, 2006 WL 3791320, at *5 (*citing In re Richards*, 249 B.R. 859, 861–62 (Bankr. E.D. Mich. 2000), in which claim for asbestos injuries was found to be property of the estate because exposure occurred prepetition, even though ability to sue did not arise until post-petition); *In re Sommer*, 2008 WL 704401, at *3 (Bankr. N.D. Ohio 2008) (same).

50. *See, e.g., Parks v. Dittmar (In re Dittmar)*, 618 F.3d 1199 (10th Cir. 2010); *In re Barowsky*, 946 F.2d at 1518–19; *but see Schneider v. Nazar (In re Schneider)*, 864 F.2d 683, 685–86 (10th Cir. 1988) (Chapter 7 debtor's interest

in payments-in-kind for not planting crops prepetition arose in contract; government agent had not signed contract until postpetition and therefore agreement was not so rooted in the bankruptcy past as to make it property of the estate).

51. *See, e.g., Expert S. Tulsa, LLC v. First Am. Title Ins. Co., (In re Expert S. Tulsa, LLC)*, 619 Fed.Appx. 779, 781 (10th Cir. 2015); *Tracy Broad. Corp. v. Spectrum Scan, LLC (In re Tracy Broad. Corp.)*, 696 F.3d 1051, 1060 (10th Cir. 2012); *In re Dittmar*, 618 F.3d at 1204; *Ford v. Ford Motor Credit Corp. (In re Ford)*, 574 F.3d 1279, 1283 (10th Cir. 2009); *Wagers v. Lentz & Clark, P.A. (In re Wagers)*, 514 F.3d 1021, 1028 n.29 (10th Cir. 2007).

52. 618 F.3d 1199, 1204–07 (10th Cir. 2010).

53. *Id.* at 1204.

that the SARs' maturation was contingent on postpetition events.[54]

Applying the *Parks v. Dittmar* test, the Court finds it really only has to answer the first part of that test here—whether Debtor had a property interest before her Chapter 13 case was closed in a cause of action against the manufacturer of the device. The answer to that question depends on when Debtor's cause of action arose, which in turn is defined by state law. In Kansas, a cause of action does not arise until the discovery of the injury. In a Chapter 13 case, if the cause of action accrues after commencement, but before the case is closed, dismissed, or converted,[55] then it is property of the estate. Here, the Trustee has not demonstrated that Debtor had any factual basis on which to bring a cause of action against the manufacturer of the device before her bankruptcy case was closed. And a cause of action based on an injury that is not discovered until after the bankruptcy case is closed is thus not property of the estate, even if the act giving rise to the cause of action occurred during the pendency of the case.

## C. Application in this case.

This Debtor's pelvic mesh device was implanted on September 28, 2011—five days after she received her discharge, but 63 days before the final decree was entered and the case closed. Although Debtor had several routine follow-up appointments, it was more than a year after closing before her physician referred her to a specialist in January 2013. The exact date the injury was first discoverable or reasonably ascertainable could be debated—a portion of the mesh device was removed in April 2012 (still post-closing), but based on the parties' stipulation, Debtor's first indication of any problems with the device itself did not occur until either January or March 2013. Because both dates were well after Debtor's case was closed, this Court need not decide the exact discovery date. Under Kansas law, Debtor's cause of action did not accrue until after her bankruptcy was closed, and thus the settlement proceeds are not property of her bankruptcy estate.

The Court would note, as an aside, that even if it went through the exercise of analyzing the other two parts of the *Parks v. Dittmar* test (essentially the *Segal* test used by the district courts in *Ross* and *Shields*—i.e., whether the interest at stake in a cause of action is sufficiently rooted in Debtor's pre-bankruptcy past so as to require it be deemed property of the estate), the outcome would be identical. First, there is no nexus, let alone a strong one, between the product liability claim and pre-bankruptcy events. In fact, the medical device here was not even implanted until over three years after Debtor filed her case. Instead, it was implanted after Debtor had completed her plan and received her discharge, but before administrative details necessary for case closing had been completed. And like in *Ross*, the undisputed evidence is that Debtor only became aware that the device was likely defective well over a year after her bankruptcy was closed. Thus, as the District Court held in *Ross*, the single pre-closing event—placement of the device—"would be rendered meaningless insofar as plaintiff's ability to obtain settlement proceeds is concerned." [56]

The *Segal* test requires a claim be "*sufficiently*" rooted in the debtor's pre-bankruptcy past.[57] In order for a claim to be

54. *Id.* at 1208.

55. § 1306.

56. 251 F.Supp.3d at 525–26, 2017 WL 1900288, at *6.

57. 382 U.S. at 379, 86 S.Ct. 511.

rooted, the claim must first exist. Like in *Ross*, because the most critical element creating her interest—the discovery that there was a defect with the medical device—did not occur until well after her case was closed, and over five years after the petition date in this previous Chapter 13 proceeding, the Trustee has not sustained his burden to show the claim to be "sufficiently" rooted" in pre-closing (let alone prepetition) events.

## III. Conclusion

This Court must apply Kansas law to determine when Debtor's cause of action accrued in order to determine whether, as of the closing date of her case, she had an actionable property interest in that cause of action. Kansas law is clear on this point. Under K.S.A. § 60–513(b), the discovery rule governs her cause of action. The trustee has failed to meet his burden of proving that Debtor could reasonably have ascertained that she was injured as a result of the medical product before her case was closed.

Instead, the stipulated facts demonstrate that Debtor did not discover the potential problem with the pelvic mesh device until well after she received her discharge and her case was closed, irrespective of the date the device was implanted. For that reason, Debtor's cause of action did not accrue until after her Chapter 13 case was closed, is not property of the estate, and the settlement proceeds from such cause of action need not be turned over to the long-closed bankruptcy estate.

The Trustee's Motion for Turnover[58] is denied. The Court further directs the Clerk to re-close this case after the appeal

**58.** Doc. 118.

time runs on this order if no appeal is timely filed.

**It is so ordered.**